IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| DONNY RAY WELCH, PRO SE, | § | |
| TDCJ-CID No. 1375713, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:09-CV-0291 |
| | § | |
| TEXAS TECH UNIVERSITY HEALTH | § | |
| SERVICES CENTER, | § | |
| LANETTE LINTHICUM, | § | |
| Dr. DENISE SHIELDS, | § | |
| Dr. TIMOTHY REVELL, | § | |
| Mrs. NFN PRIOR, | § | |
| Warden JOHN / JANE DOE, | § | |
| Correctional Officer JOHN DOE, | § | |
| Correctional Officer JOHN / JANE DOE, | § | |
| Ms. / Mrs. N. FLORES, | § | |
| STEPHEN DUNLAP, | § | |
| SUZZANNE TENORIO PAUL, and | § | |
| BONNIE WIELAND, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Plaintiff DONNY RAY WELCH, acting pro se and while a prisoner confined in the

Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant

to Title 42, United States Code, section 1983 complaining against the above-named defendants

and has been granted permission to proceed in forma pauperis.

By his February 8, 2010 Amended Complaint, plaintiff claims the defendants displayed

deliberate indifference to his serious mental illness by failing or refusing to prescribe the

psychiatric medications he felt would effectively treat his symptoms.  Plaintiff alleges he was

incarcerated at the Clements Unit from August of 2007 to December of 2007.  He states he

informed the defendants he suffered from Schizo-affective Disorder with severe anxiety and explosive tendencies and that he heard voices and saw things and could become violent and suicidal.  Plaintiff says his symptoms became severe in September or October and he begged the defendants for help both verbally and in writing.  He says he told them the voices were telling him to hurt his cellie and himself, but defendants ignored him.  Plaintiff says that on December 3, 2007, his cellie attacked him and they fought.  He alleges he was moved into a separate cell and given his property.  The next day, he says, he removed the blades from a Bic razor and sliced his arms several times.  Plaintiff says he didn't realize what he had done until February of 2008.

Plaintiff requests nominal, punitive, compensatory and injunctive relief.  No further specificity concerning relief is contained in plaintiff's amended complaint.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2).  The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions.  42 U.S.C. 1997e(c)(1).  A *Spears* hearing need not be conducted for every *pro se* complaint.  *Wilson v.*

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see* also, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

*Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The Magistrate Judge has reviewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

## *SPEARS* HEARING

On December 16, 2010, a hearing was conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Initially, plaintiff stated that, when he was "chained," *i.e.* transported, from the Telford Unit to the Clements Unit for the *Spears* hearing, he was not told the night before transport that he was on the chain and was not given sufficient time that morning to pack his legal materials, his I-60's and other materials.  Plaintiff then stated he was rushed in packing his legal materials at the Telford Unit and was not able to look through everything to see that he brought the right materials for this lawsuit and stated that he simply "[brought] the wrong stuff."

The Court gave plaintiff a copy of his complaint and a copy of the medical records that had been produced to the Court for purposes of the *Spears* hearing.  Plaintiff was instructed that, if during the course of the hearing he felt he had a document he wanted to present but had been unable to bring to the hearing, he could inform the Court during the hearing and state what its contents were.

Plaintiff was sworn and testified he had been diagnosed with Schizo-affective Disorder with anxiety and explosive tendencies.  He said that, after his arrival at the Clements Unit in August of 2007, he began to hear voices.  Plaintiff sent messages to the psych department and talked with guards.  He stated he was in High Security at the time and that "they" responded by

---

[2]*Cf, Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing.  A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

seeing him cellside but did not believe him.  Plaintiff said he was treated by a psychiatric nurse practitioner at that time who also saw him cell-side.  Plaintiff said he asked "bosses" to put him in a cell by himself, without success.

Plaintiff said that, at that time, he was on Thorazine (an anti-psychotic), Celexa (an anti-depressant), Cogentin, and Tegretol (an anti-seizure which stabilizes mood).  Plaintiff said in September or October of 2007, he "started going off the deep end," but no one believed him.  At some point, it was discovered plaintiff had been hoarding his medicine in his locker, instead of taking it.

Plaintiff testified he saw defendant Nurse PRIOR on October 15, 2007 and that she reinstated his medication at that time when he promised not to hoard it.  Plaintiff said, however, that he was suffering visual hallucinations at that point and stopped showering and eating.  Plaintiff said a lot of people in High Security would act up in order to get sent to the Montford Unit and he said he felt "they" thought that was what he was doing.

Plaintiff testified that, on December 3, 2007, his cellmate attacked him with a razor and he stabbed his cellmate with a pen.  Plaintiff said he was not hurt badly.

Plaintiff testified he was pulled out of his cell, placed in solitary confinement, and given his property.  Plaintiff stated he went though his property until he found a Bic razor and, the day after his fight with his cellie, he cut his arms.  He said the cuts were not deep or suicidal but did produce scars.  He testified he was placed in Crisis Management until he was shipped to Montford Unit on December 17, 2007.

Doctor Williams was present at the hearing and testified under oath as to the normal psychiatric protocol for such a situation.  She stated that if an inmate exhibits self-mutilating

behavior, is threatening to kill himself or to kill others, or is psychotic, the inmate is seen by a psychiatrist and often sent to Crisis Management so his symptoms can be addressed with medication or monitoring.

Doctor Williams stated she did not have plaintiff's psychiatric records, but noted his medical records for December 11, 2009, indicated he had previously been sent to Crisis Management and was no longer homicidal or suicidal.

Doctor Williams testified Thorazine and Cogentin are formulary medications, the Thorazine being given if an inmate is psychotic. She stated there are a number of reasons why a person may be psychotic, noting that, by his own report, plaintiff suffered from schizo-affective disorder. Doctor Williams said schizo-affective disorder means that sometimes plaintiff's symptoms are manic or as if he is bipolar and other times his symptoms are psychotic, as if he is a schizophrenic, but he isn't.

Doctor Williams testified those symptoms appeared to be transient and eventually they ruled it was "psychotic disorder not otherwise specified," which, she said, is a catch-all phrase used where the psychosis is not permanent or caused by schizophrenia and it clears up. She stated they treated that and gave plaintiff something for the depression and for the psychosis.

Doctor Williams testified if an inmate is threatening to hurt himself or others, is threatening to self-mutilate, or is clearly psychotic, he is placed in crisis management or required to enter into a contract not to hurt himself or others.

Doctor Williams further testified Axis One covers psychiatric diagnoses such as schizophrenia, bi-polar, depression, those things that really require medication. She said Axis Two diagnoses encompass things such as mental retardation or personality disorders.

Personality disorders are learned behaviors by which a patient tries to cope with whatever the situation may be.  For Axis Two disorders a patient probably will not need medication; for Axis One disorders, the patient will.  Doctor Williams said Axis Two disorders sometimes drive the behavior displayed under Axis One and that some of the behaviors can be calculated and planned from an Axis Two standpoint.

Doctor Williams stated it was noteworthy that plaintiff's records show he had a diagnosed personality disorder and that often that personality component can make a patient appear to have an Axis One component, such as schizo-affective disorder or depression, etc.

Doctor Williams testified that some of the determination whether to place an inmate in crisis management is subjective and some objective.  She stated that if there is a pattern of complaining or saying things which do not come to fruition, caregivers can conclude the patient is not a good self-reporter of his activities or symptoms.

Plaintiff testified he had a well-documented history of attempted suicide, self-mutilation, and violent behavior towards others, and said his mother sent the records to TDCJ.  He said he had been hospitalized over twenty times in the free world since his stint in the army in 1992, and attempted suicide 15 times in 8 weeks, and had been placed against his wishes in a mental hospital for attacking other people.

## THE LAW AND ANALYSIS

### INJUNCTIVE RELIEF

Plaintiff was transferred to the Montford Unit as soon as possible following his episode of self-mutilation and is presently assigned to the Jester IV Unit.  He is no longer at the Clements Unit.  Consequently, plaintiff's request for unspecified injunctive relief is MOOT.  *Beck v.*

6

*Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988).  Mootness removes a federal court's authority to adjudicate, depriving it of subject matter jurisdiction.  *Savidge v. Fincannon*, 836 F.2d 898, 904 (5th Cir. 1988).  There remains plaintiff's requests for monetary relief.

**DEFENDANT TEXAS TECH UNIVERSITY HEALTH SERVICES CENTER and REMAINING DEFENDANTS IN THEIR OFFICIAL CAPACITIES**

Plaintiff's claim for monetary relief against defendant TEXAS TECH UNIVERSITY HEALTH SERVICES CENTER is barred by the Eleventh Amendment.  The TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER[3] is an agency of the State of Texas, and plaintiff's claims against this entity is, in effect, raised against the State of Texas.  The Eleventh Amendment embodies "the fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Art. III."  *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 97-98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984).  The doctrine of sovereign immunity bars suit against a state agency because, in such a case, the State itself is the real party in interest. Consequently, plaintiff's claim for monetary relief against defendant TEXAS TECH UNIVERSITY HEALTH SERVICES CENTER is barred and must be dismissed pursuant to Title 28, United States Code, section 1915(e)(2)(B)(iii).

In addition, as an agency of the State, the TEXAS TECH UNIVERSITY HEALTH SERVICES CENTER is not a "person" within the meaning of section 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). Therefore, plaintiff's claims for monetary relief lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

---

[3]*United States v. Texas Tech University*, 171 F.3d 279, 289 n.14 (5th Cir. 1999)("The Eleventh Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center with sovereign immunity as state institutions.").

The same is true for plaintiff's claims for monetary relief against the remaining defendants in their official capacities.  A suit against an official in his official capacity is actually a suit against the state.  *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Sanders v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992).  Consequently, plaintiff's action against defendants in their official capacities is foreclosed by the Eleventh Amendment.

**DEFENDANTS WARDEN JOHN/JANE DOE, CORRECTIONAL OFFICER JOHN/JANE DOE, AND MS./MRS. N. FLORES IN THEIR INDIVIDUAL CAPACITIES**

Plaintiff complains that, at some unidentified date(s), he complained to these defendants that he was receiving "grossly inadequate treatment" for his mental illness and was at risk of harm because he could become violent or suicidal.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction  of pain' . . . proscribed by the Eighth Amendment."  Such indifference may  be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).  Nothing in plaintiff's allegations or the exhibits to his complaint indicate any one or more of these defendants was directly involved in the provision of mental health care to him.  Plaintiff does not allege any act or omission by any one or more of defendants WARDEN JOHN/JANE DOE, CORRECTIONAL OFFICER JOHN/JANE DOE, and MS./MRS. N. FLORES in connection with the actual provision of health care or any personal knowledge of his medical needs.

Critically, plaintiff does not allege any of these defendants interfered with or prevented mental health caregivers from administering the proper health care.  Moreover, plaintiff has testified he received health care from mental health professionals during this time and was seen

8

cellside by such professionals.  In analyzing such claims, the Third Circuit has opined:

> If a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.... Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004).  By plaintiff's own account, all anyone had before them to indicate plaintiff was not receiving adequate care was plaintiff's complaints that he needed different medication.  The accuracy or inaccuracy of such a complaint was not something persons who were not mental health professionals could determine.

Plaintiff has failed to state a claim of deliberate indifference to his serious medical needs against defendants WARDEN JOHN/JANE DOE, CORRECTIONAL OFFICER JOHN/JANE DOE, and MS./MRS. N. FLORES on which relief can be granted.

**DEFENDANTS LINTHICUM, SHIELDS, AND REVELL IN THEIR INDIVIDUAL CAPACITIES**

Plaintiff states defendant LINTHICUM was the Medical Director of the Health Services Division of TDCJ in Huntsville, defendant SHIELDS was the Medical Director of Texas Tech University Health Sciences Center in Lubbock, and defendant Dr. REVELL was the Unit Health Coordinator at the Clement Unit.  Plaintiff says he wrote to each defendant explaining his mental illness and complaining that he needed to be placed on different psychiatric medications.  He states each failed to satisfactorily resolve his complaints and ignored his pleas.

Plaintiff appears to sue these defendants, and, perhaps, defendant Warden JOHN/JANE

DOE because of their supervisory positions. The acts of subordinates trigger no individual section 1983 liability for supervisory officers. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314(5th Cir. 1999). A supervisory official may be held liable only when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or there is a sufficient causal connection between the official's act and the constitutional violation sought to be redressed. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981) (*per curiam*). Plaintiff has alleged no fact demonstrating personal involvement by defendant Warden JOHN/JANE DOE or defendants LINTHICUM, SHIELDS, and REVELL in his mental health care and has alleged no fact showing any causal connection between their acts and the alleged constitutional violation. Consequently, plaintiff has failed to state a claim on which relief can be granted against one or more of defendants Warden JOHN/JANE DOE, LINTHICUM, SHIELDS, and REVELL.

**DEFENDANT SUZZANNE TENORIO PAUL**

Plaintiff states defendant PAUL is a Nurse Practitioner at the Clements Unit. He says he complained to her that he was not receiving adequate treatment for his mental illness and needed to be placed on different anti-psychotic medications. He says she informed him he needed to tell his mental health caregivers because she was not involved in his mental health treatment.

Plaintiff has alleged no fact demonstrating personal involvement by defendant PAUL in his mental health care and it appears she treated his physical medical needs, not his mental ones. Plaintiff has alleged no fact showing defendant PAUL had any personal knowledge concerning his mental health needs or what medications he was or should be receiving. She appropriately directed him to communicate with his mental health caregivers, and plaintiff does not indicate he

was prevented from doing so or that there was anything more defendant PAUL could have done.

Defendant PAUL was entitled to rely on the mental health professionals caring for plaintiff to

provide adequate mental health treatment. *Spruill v. Gillis*, 372 F.3d at 236.

Plaintiff has failed to state a claim of deliberate indifference against defendant PAUL.

**DEFENDANTS PRIOR, DUNLAP, AND WIELAND**

Plaintiff states defendant WIELAND was his psychiatrist at the Clements Unit, defendant

DUNLAP was his psychologist there, and defendant PRIOR was a Nurse Practitioner in the

mental health department. Plaintiff claims he informed each of these defendants that he felt he

needed different medications for his mental illnesses and complained that the anti-psychotic

medication he was on was not working. Plaintiff said a lot of people in High Security would act

up in order to get sent to the Montford Unit and he said he felt "they" thought that was what he

was doing. Plaintiff says they ignored his pleas, and his altercation with his cellmate and his

subsequent self-mutilation the next day were the result.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth

Amendment violation and states a cause of action under Title 42, United States Codes section

1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 291-93, 50 L.Ed.2d 251 (1976).

Deliberate indifference is defined as a failure to act where prison officials have knowledge of a

substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825,

114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). However, not every claim of inadequate or

improper medical treatment is a violation of the Constitution, *Estelle v. Gamble*, 429 U.S. 97,

105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); nor does a disagreement with a doctor over the

method and result of medical treatment require a finding of deliberate indifference. *Spears v.*

*McCotter*, 766 F.2d 179 (5th Cir. 1985).  Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension.  *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).  A prisoner's disagreement with prison officials regarding medical treatment is insufficient to establish an unconstitutional denial of medical care.  *Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir. 1997).  "[N]egligent medical care does not constitute a valid section 1983 claim."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Further, medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Plaintiff's complaint that he was refused the medications he felt would be more effective and which he told mental health care professionals he needed does not support a claim under section 1983.  Plaintiff has informed the Court he was seen cellside by his mental health caregivers and states he was on four psychiatric medications when he arrived at the Clements Unit.  Further, except for one interruption caused by his hoarding of medication in his locker, those medicines were continued during his time at Clements.

Plaintiff testified that he felt his complaints were not believed because a lot of inmates thought being at the Montford Unit was better than in Clements High Security and would act up in order to get sent to the Montford Unit.  He said he felt "they" thought that was what he was doing.  In light of Doctor Williams' testimony that mental health caregivers must evaluate whether an inmate is a good self-reporter of symptoms and her testimony that behavior which could appear to be part of an Axis I diagnosis is sometimes calculated and planned behavior driven by an Axis II condition, such as a personality disorder, it is clear plaintiff's mental health

caregivers were not required to accept plaintiff's opinion of the proper medication at face value. Instead, they were required to exercise medical judgment concerning what medications they felt were appropriate.

Although plaintiff seeks to blame his caregivers for the fight with his cellie, it is relevant to note that, by plaintiff's own account, his cellmate attacked him.  There is no indication plaintiff's medications had anything to do with that.

Further, although plaintiff seeks to blame his caregivers for his self-mutilation the next day, at that point plaintiff had been given the single-cell status which he was demanding when he threatened to mutilate himself.

The facts presented by plaintiff, both in his complaint and at the *Spears* hearing, show his mental health caregivers gave him treatment for his mental health issues and exercised their medical judgment as to whether or not is was the appropriate treatment.  Even if such treatment was erroneous, it did not constitute deliberate indifference.  *Graves v. Hampton,* 1 F.3d 315, 319 (5th Cir.1993)(Even negligent or erroneous medical treatment or judgment does not provide a basis for a section 1983 claim).  As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo,* 457 U.S. 307, 322-23, 102 S.Ct. 2452, 2461-62, 73 L.Ed.2d 28 (1982).

Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension.  *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).  A prisoner's disagreement with prison officials regarding medical treatment is insufficient to establish an unconstitutional denial of medical care.  *Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir. 1997).

**CONCLUSION**

For the reasons set forth above and pursuant to Title 28, United States Code, sections

1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the

RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil

Rights Claims filed pursuant to Title 42, United States Code, section 1983, by plaintiff DONNY

RAY WELCH be DISMISSED WITHOUT PREJUDICE PURSUANT TO RULE 12(b)(1),

FED.R.CIV.PRO., as BARRED BY SOVEREIGN IMMUNITY; WITH PREJUDICE AS

FRIVOLOUS; AND FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE

GRANTED.

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of November 2012.

_CLINTON E. AVERITTE_
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* <u>NOTICE OF RIGHT TO OBJECT</u> \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

14

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).